IN THE UNITED STATES DISTRICT COURT 04 JUL 19 AM 10: 42
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

|  |  |  |
|---|---|---|
| WENDELL F. GILLEY, an individual and as class representative, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV–04–PT–0562–M |
| MONSANTO COMPANY, INC., a corporation; MONSANTO COMPANY SALARIED EMPLOYEES' PENSION PLAN; EMPLOYEE BENEFITS PLAN COMMITTEE, and PHARMACIA CORPORATION, a corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTERED**
JUL 19 2004

## MEMORANDUM OPINION

This cause comes on to be heard upon defendants Monsanto Company, Inc.'s ("Monsanto"),

Monsanto Company Salaried Employees' Pension Plan's ("the Plan"), Employee Benefits Plan

Committee's ("the Committee"), and Pharmacia Corporation's ("Pharmacia") Motion to Dismiss,

filed on May 12, 2004 as well as plaintiffs Wendell F. Gilley's ("Gilley"), et al., Motion to Continue,

filed on May 25, 2004.[1]

## FACTS[2] AND PROCEDURAL HISTORY

In late 1971 or early 1972, defendant Monsanto opened a facility in Marshall County,

---

[1] Since Gilley purports to represent a class of similarly situated plaintiffs, the court refers to "plaintiffs" throughout this memorandum opinion.

[2] The facts are as alleged in the complaint and as evidenced by the various pension plans. Of course, there has been no certification of a class. The court conducted recorded oral arguments on June 29, 2004.

1

Alabama. Gilley is a former salaried employee of Monsanto. Gilley began his employment with Monsanto on August 31, 1972, shortly after the plant opened. According to Gilley, he worked continuously until March 31, 1981 – four weeks after the facility shut down.[3] As a salaried employee, Gilley participated in Monsanto's pension plan for salaried employees ("the Plan"). In this lawsuit, Gilley represents himself and a would-be class of other former Monsanto employees (including individuals not employed at the Marshall County, Alabama facility).

The other defendants are the Plan, the Committee that administers the Plan, and Pharmacia, a successor corporation to Monsanto. Sometime after the "New" Monsanto Company, Inc. ("New Monsanto") was incorporated in February 2000, the Plan was transferred to New Monsanto.

In late 1980 or early 1981, Monsanto disclosed its intention to close the Alabama plant. Responding to this information, employees at the plant openly complained to Monsanto management that the plant shutdown was designed to prevent employees from receiving their pension benefits. In an effort to assuage the employees' concerns, members of Monsanto's management held open meetings with employees wherein, Gilley alleges, the members assured employees that anyone hired before September 1972 was fully "vested" under the Plan and eligible for benefits. According to the complaint, a memorandum memorializing this promise was sent to employees.[4]

The Plan[5] provides pension benefits for salaried employees of Monsanto (Apdx A, §2).

---

[3] Defendants allege that company records show that Gilley was terminated on February 16, 1982, while on lay off. The complaint does not appear to contain this "fact." *See infra* footnote 13.

[4] The court does not appear to have a copy of this memorandum.

[5] According to defendants, since Gilley's complaint refers to the amended Plan and relies upon its terms to demand benefits, this court may consider the plan document as part of the pleadings for purposes of a motion to dismiss without converting this motion into a motion for summary judgment. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). This court confirms that certain "facts" in Gilley's complaint, e.g., a 1000 Hours of Service Equivalency described below, appear to be taken from the amended Plan

Under the Plan, an employee accrues credited service for vesting purposes, i.e., Vesting Service, based on the number of "Hours of Service" he/she completes in a plan year. Vesting Service means the total and fractional years of service. A participant is credited with one year of Vesting Service for each Plan Year during which he/she completes at least 1,000 Hours of Service with Monsanto. According to plaintiff, a Hour of Service is defined under the Plan as an hour for which an employee is directly or indirectly compensated by the employer for the performance of his/her job duties. *See* Compl. at ¶¶ 50-51. An Hour of Service includes: overtime clock hours, hours of service required to be taken into account to satisfy federal military service laws . . ., hours of absence from active work because of regular paid vacations or holidays, and hours of absence from active work because of occupational or non-occupational illness or disability. *Id.*[6]

In 1979, defendants amended the method of calculating Hours of Service for technical and clerical employees by implementing the "95 Hour Rule." Under the 95 Hour Rule, plaintiffs allege, defendants no longer credited overtime hours towards Vesting Service as it had in the past; rather, technical and clerical employees received a flat rate 95 Hours of Service for each semi-monthly payroll period regardless of the actual numbers of Hours of Service performed. By applying the amendment retroactively, plaintiffs argue, defendants reduced and/or eliminated accrued Hours of Service/Vesting Service under the Plan, resulting in Gilley and other participants suffering either a reduction or loss in their right to accrued service time and/or pension benefits.

During its first few years of operation, Monsanto's Marshall County, Alabama plant had a

_____

(dated 1980) contained in defendants' Appendix, Ex. A. *See infra* footnote 6.

[6] These allegations in the complaint appear to be taken from the amended plan (dated 1980) attached to defendants' Motion to Dismiss. *See* Apdx. A § 17.5.

3

general policy of giving every employee the opportunity to work as much overtime as possible. Monsanto's management strongly encouraged employees to work overtime during this period. In 1972, Gilley worked as much overtime as physically possible. From August 1972 through December 31, 1972, Gilley alleges, he worked at least 40 actual hours of overtime (not time and a half) per semi-monthly payroll period and a maximum of 60 to 70 hours of overtime each semi-monthly payroll period in addition to the 80 hours of regular time. As a result of overtime, Gilley alleges, he worked over 1000 hours for Monsanto in 1972. Again, Gilley emphasizes, under the Plan, an employee with a minimum of 1000 Hours of Service in any Plan year is credited with one full year of Vesting Service. Accordingly, Gilley alleges, he is entitled to one year of Vesting Service for the calendar year 1972. Additionally, Gilley alleges, he is entitled to eight years of Vesting Service from January 1, 1973 through December 31, 1980.[7]

Under the Plan, an employee is entitled to receive credit for Hours of Service up to 12 months as a result of a layoff. Because Gilley's termination was the result of a layoff, he asserts, he is entitled to credit for Vesting Service between March 31, 1981 and March 31, 1982. According to Gilley, he is entitled to a full year of Vesting Service for the period January 1, 1981 through December 31, 1981 as well as six (6) semi-monthly payroll periods of credited Vesting Service for January 1, 1982 through March 31, 1982, for a total of ten plus years of service. Under the Plan,

---

[7] Defendants do not dispute this eight years of Vesting Service. The real dispute is how much time the plaintiff accrued in 1972. The defendants say .411 years. The plaintiffs say one full year based upon 1000 hours of service. The defendants give Gilley credit for 9.594 years. Gilley claims entitlement to a full year based on 1000 hours either at the beginning of his employment or at the end of his employment which is not credited by the defendants. The plaintiffs do not rely on the 95-hour rule and the defendants do not insist on its application. Another way of looking at the dispute is that the defendants count the consecutive time from August 31, 1972 to February or March 1982 and Gilley did not reach 10 years of consecutive service as determined on a mere consecutive day counting basis. Gilley, on the other hand, counts the full 9 years for 1972-1981 and credits himself for another full year for 1972 even though he only was employed four months in 1972 and two or three months in 1982.

Gilley asserts, employees with ten years of Vesting Service are entitled to a pension benefit.

Plaintiff alleges that he began working at the Monsanto plant in Marshall County in August 1972 (Compl. ¶ 8) and was continuously employed by Monsanto until March 31, 1981 (Compl. ¶¶ 10, 22) for a total time with Monsanto of nine years and seven months.  He alleges that he should be credited with over ten years of service.  Regarding vesting service during 1972, plaintiff alleges that he began working for Monsanto in August 31, 1972 and continued working for the remainder of that year – nine semi-monthly payroll periods (Compl. ¶¶ 9, 11). He further alleges that he worked between 40 to 70 hours of overtime during each two-week pay period in addition to 80 hours of regular time (Compl. ¶ 14) for a total of more than 1000 hours of work during 1972 (Compl. ¶ 15). Thus, plaintiff concludes, he is entitled to one year of Vesting Service for his work from August 1972 to December 1972 (Compl. ¶ 17).  Regarding vesting service from 1973 through 1980, plaintiff alleges, Gilley worked for Monsanto from 1973 through 1980 and is entitled to eight years of Vesting Service (Compl. ¶18).  Regarding vesting service during 1982, plaintiff alleges, Monsanto closed the Marshall County plant in February 1981 and that he and other employees were laid off, but he asserts that he continued working until March 31, 1981, to help with shut-down of the facility (Compl. ¶¶19, 22).  Gilley alleges his entitlement to one year of Vesting Service during 1981 and to six semi-monthly payroll periods from January 1, 1982 to March 31, 1982 (Compl. ¶ 24, 25).

On January 31, 2001, plaintiff applied for benefits through a telephone conversation with a representative of Pharmacia.  During that telephone conversation, Gilley alleges, the Pharmacia representative verified Gilley's eligibility under Monsanto's pension plan and assigned him a personal identification number ("PIN").   In April 2001, Gilley received a letter denying pension benefits on the basis that he did not have ten years of service and was not vested under Monsanto's

Plan. Despite continued communication with Pharmacia/Monsanto regard Gilley's pension benefits, defendants never informed plaintiff of his rights, including his right to appeal the denial of his pension benefits (Compl. ¶ 30).

After retaining counsel, Gilley appealed this denial in December 2003 (Compl. ¶ 32). The Committee considered and denied Gilley's appeal, notifying plaintiff of the decision by letter dated February 25, 2004 (Compl. ¶ 33). Plaintiff alleges that the Committee wrongfully failed to grant plaintiff a full year of Vesting Service during 1972 and the correct amount of Vesting Service in 1982 and thus erroneously found that plaintiff had only 9.594 years of Vesting Service with Monsanto (Compl. ¶ 36).

On March 17, 2004, Gilley filed this federal lawsuit. Count One alleges wrongful denial of Gilley's pension and seeks pension benefits under the terms of the Plan, as provided by section 502 of ERISA, 29 U.S.C. § 1132.[8] Count Two also asserts a claim under 502 of ERISA, alleging that defendants promised the pension benefits would be vested and now are equitably estopped from denying such benefits.[9] Count Three alleges interference with plaintiff's ERISA rights by closing

_____

[8] Specifically, Count One alleges:

> Defendants arbitrarily and capriciously denied plaintiff credit for his accrued Vesting Service for 1972.

> Defendants arbitrarily and capriciously denied plaintiff credit for a full year of Vesting Service from his last day of employment at Monsanto until twelve months thereafter on or about March 31, 1982.

> As a result of the Committee's arbitrary and capricious decision not to credit plaintiff for his accrued Vesting Service for 1972 and the correct amount of his Vesting Service for 1982, the Committee found that plaintiff had 9.594 years of Vesting Service with Monsanto and denied him his rightful pension benefits.

[9] Count Two alleges that during open meetings regarding the plant's closure, Monsanto management promised that employees hired before September 1972 would receive enough credited service time to be fully vested under the Plan, entitling them to full benefits upon retirement. Gilley alleges that management reneged on such promise.

the Monsanto plant to prevent the vesting of benefits.[10]  Count Four alleges that defendants reduced

or eliminated benefits in violation of ERISA § 204(g)(1), 29 U.S.C. § 1054, by adopting the 95 Hour

Rule for salaried employees.[11]  Finally, Count Five alleges, the Committee or Monsanto as the plan

administrator breached fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104.[12]

## MOTION TO DISMISS STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6)

---

[10] Specifically, Count Three alleges:

Defendants interfered with plaintiff and/or similarly situated plan participants' attainment of pension benefits by closing the Alabama plant at a time that prevented employees at the plant from becoming vested in the plan thereby denying them their rightful pension benefits.

Defendants interfered with plaintiff and/or similarly situated plan participants' attainment of pension benefits by amending the vesting requirements in such a way as to discriminate against certain plan participants.

[11] Specifically, plaintiff alleges the following: Monsanto Plan's allows an employee to accrue credited service for vesting purposes based on the number of Hours of Service he/she completes in a plan year; a participant receives a full year of Vesting Service for each plan year during which he/she completes at least 1,000 Hours of Service; an Hour of Service is defined under the plan as an hour for which an employee is directly or indirectly compensated by the employer for the performance of his/her job duties; to the extent that Hours of Service are not otherwise treated as Hours of Service, an Hour of Service includes overtime clock hours, hours of service required to be taken into account to satisfy federal military service laws, hours of absence from active work because of regular paid vacations or holidays, and hours of absence from active work because of occupational or non-occupational illness or disability; defendants arbitrarily and capriciously amended the method of calculating Hours of Service for technical and clerical employees by implementing the 95-Hour Rule, under which technical and clerical employees would receive a flat rate 95 hours of service for each semi-monthly payroll period regardless of the actual number of Hours of Service performed; by applying the amendment retroactively, defendants reduced and/or denied the amount of accrued Hours of Service or "Vesting Service" under the Plan; and as a result of this retroactive application, plaintiff and others either suffered a reduction or loss in their right to accrued service and/or their pension benefits.

[12] Count Five alleges:

The Committee and/or Monsanto as the plan administrator(s) and/or fiduciary[ies] failed to discharge their duties with respect to the plan and its participants as required by ERISA in that the Committee and/or Monsanto intentionally misled and deceived employees about their pension benefits: by assuring employees that they would be credited with sufficient service in order to be fully vested when the Alabama plant closed and then denying them benefits over twenty (20) years later; by closing the Alabama plant to prevent a significant number of employees who were just shy of enough time to be fully vested from becoming vested; by amending the method of calculating Hours of Service under the Monsanto Pension Plan for the sole purpose of benefitting the defendants rather than the plan participants thereby denying participants their actual hours of service and thus their pension benefits.

7

motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS

I.    Defendants' Motion

   A.    <u>Count One Fails To State A Claim For Benefits Because Plaintiff Did Not Obtain The Required Ten Years Of Vesting Service Under The Terms Of The Plan</u>

Under ERISA §502(a)(1)(B), defendants argue, a participant may sue "to recover benefits due <u>under the terms of his plan</u>, to enforce rights <u>under the terms of the plan</u>, or to clarify his rights to future benefits <u>under the terms of the plan</u>." 29 U.S.C. § 1132(a)(1)(B) (emphasis supplied). Any claim under § 502(a)(1)(B), defendants assert, depends upon a right to benefits "under the terms of the plan." *See Hunt v. Hawthorne Assocs.*, 119 F.3d 888 (11th Cir. 1997)(noting the cornerstone of an ERISA plan is the written instrument). Here, defendants contend, the terms of the Monsanto Plan require ten years of Vesting Service to obtain a pension and provide specific instructions on the calculation of Vesting Service. (Apdx A §6.1). According to defendants, Gilley lacks ten years of Vesting Service and thus cannot claim benefits under the terms of the Plan.

Although Gilley tries to stretch the few months of work in 1972 into a full year of service, defendants argue, this effort relies on counting overtime hours and thus is contrary to the Plan's terms

8

governing hours of service. Under the terms of the Plan, defendant argues, Gilley is entitled to only 0.411 years of service during 1972.[13]

Department of Labor regulations promulgated under ERISA, defendants contend, permit plans to use "equivalencies" in lieu of actual hours in computing hours of service for participation, vesting, and benefit accrual purposes. According to defendants, equivalencies allow an employer to keep track of service on a simplified basis and are particularly useful where detailed records are unavailable or burdensome to maintain. *See* F. Finston & D. D'Alessandro, Tax Management: Plan Qualification - Pension and Profitsharing Plans A-27 (2003) (excerpt attached at Apdx B). "The equivalencies are designed to enable a plan to determine the amount of service to be credited to an employee in a computation period on the basis of records which do not accurately reflect the actual number of hours of service required to be credited to the employee [the hour of service regulations]." *See* 29 C.F.R. § 2530.200b-3(c)(1).

The regulations afford an employer flexibility in selecting among several methods. *See* 29 C.F.R. § 2530.b-3(c)(1) and (2). A plan that uses the semi-monthly equivalency method must credit

---

[13]   The complaint divides Gilley's service at Monsanto into three parts: (1) a portion of a year from his initial hiring in August through December, 1972, (2) nine years of continuous employment from 1973 through 1981, and (3) a portion of a year in 1982.

However, defendants argue, even crediting plaintiff with all the service to which he claims entitlement for the year 1982 would not bring his service up to ten years. According to defendants, plaintiff alleges that he worked at Monsanto until he was laid off on March 31, 1981, and is thus entitled to twelve months of Vesting Service following his layoff (thus receiving a full year of credit for 1981 and three months of credit in 1982, i.e. 95 hours x 6 semi-monthly periods/2080 hours per year = 0.274 years of service). However, Monsanto notes, the Committee credited plaintiff with a year of service in 1981 but rejected his calculation of service during 1982 because company records show that plaintiff was terminated on February 16, 1982, while on lay off, and thus Gilley could earn no Vesting Service after termination (95 hours x 4 semi-monthly periods/2080 hours per year = 0.183).

Any arguments based upon the 95-Hour Rule appears to have been disposed at the hearing held on June 29, 2004. Because neither side relies upon the 95-Hour Rule, neither does this court. This court will repeat some arguments related thereto.

an employee with 95 hours of service for each semi-monthly period in which the employee would be required to be credited with one hour of service under Section 2530.200b-2). *See* 29 C.F.R. § 2530.200b-3(e)(1)(iii); *see also* Finston & D'Alessandro, *supra* at A-29. Section 17.5 of the amended Plan (*see Appendix A*) adopts the 95-hour rule rather than using actual hours worked. Under the 95-hour rule, defendants argue, Gilley accumulated 855 Hours of Service in 1972:

(a) Hired on August 31, 1972 - 95 hours of Vesting Service during August
(b) September through December - 760 hours of Vesting Service (95 hours x 8 semi-monthly periods)

Since the hours total less than 1000, defendants contend, plaintiff's Vesting Service is calculated using the fraction specified in the Plan's Section 17.1(a)(ii):

$$\frac{855 \text{ Hours of Service}}{2080 \text{ Hours in Standard Work Year}} = 0.411 \text{ years of Vesting Service}$$

Defendants dispute strongly plaintiff's assertion that he is entitled to a full year of Vesting Service for his work from the end of August through December.[14] To reach the 1000-hour level, plaintiff relies on overtime allegedly earned from his hiring date through the end of December (Compl. ¶ 14). Defendants do not address the truth of this allegation of overtime, contending it is not relevant because Gilley's reliance on overtime hours to calculate Vesting Service contradicts the Plan's terms and the 95 Hour Rule. Therefore, defendants argue, plaintiff lacks ten years of Vesting Service as required by the Plan and cannot state a claim for benefits as a matter of law.[15]

---

[14] Under section 17.1(a)(1) of the Plan, defendants remind the court, a participant is entitled to a full year's credit for any year in which the participant completes 1000 Hours of Service.

[15] Defendants argue that there is nothing unfair or inequitable about the 95 Hour Rule. According to defendants, the Rule awarded Gilley 95 hours of service during August 1972 despite his starting on the last day of the month. By defendants' account, the equivalency regulations expressly recognize that record keeping for salaried employees in particular may be burdensome or impossible and that payroll records from prior decades may no longer be available (as in this case).

B.    Count Two Fails To State An Estoppel Claim For Benefits[16]

According to defendants, the Eleventh Circuit has created "a very narrow common law doctrine under ERISA for equitable estoppel." *See Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090 (11th Cir. 1999). Equitable estoppel is only available when "(1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity." *See Id.*; *see also Alday v. Container Corp. of Am.*, 906 F.3d 660, 666 (11th Cir. 1990).

These limitations follow from the requirement that employee benefit plans be "established and maintained pursuant to a written instrument." *See* 29 U.S.C. § 1102(a)(1). "Congress rejected the use of informal written agreements to modify an ERISA plan." *Adams v. Thiokol Corp.*, 231 F.3d 837, 843 (11th Cir. 2000) (*quoting Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986) (*citing Johnson v. Central States, Southeast and Southwest Areas Pension Fund*, 513 F.3d 1173, 1174-75 (10th Cir. 1975) (stating that benefits may not be enforced according to a company booklet and letter that are inconsistent with the terms of a written pension plan).

In this case, defendants argue, Gilley has not alleged ambiguity in the Plan or that the supposed oral or written communications served to interpret such ambiguity.

C.    Count Three Fails To State A Claim For Interference With Attainment Of Pension Rights Under ERISA § 510.

29 U.S.C. § 1140 (ERISA section 510) makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he

---

[16] Count Two alleges that defendants promised employees that anyone hired before September 1972 would receive enough credited service to be fully vested under the Plan (Compl. ¶¶ 40, 41). The promises allegedly were made orally (Compl. ¶ 41) and in an unspecified written memorandum (Compl. ¶40).  On that basis, Count Two claims equitable estoppel.

11

is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act."

Count Three alleges a violation of this section based on defendants (1) closing the Alabama plant to allegedly prevent employees from becoming vested in the Plan and (2) amending the vesting requirements in such a way as to discriminate against certain plan participants (Compl. ¶¶ 45, 46).

Defendants assert that the two-year statute of limitations has run. *See Musick v. Goodyear Tire & Rubber Co.*, 81 F.3d 136, 137 (11th Cir. 1996)("We conclude that the district court was correct in determining that a two-year statute of limitations is applicable to section 510 actions brought in Alabama, at least insofar as back pay, back benefits, and retirement eligibility credits are the remedies sought.") The plant closed in 1981 (Compl ¶ 19), plaintiff was terminated in March 1981 (Compl. ¶¶ 22-23), and the Plan was amended to include the 95-hour rule in 1980 (Apdx C § 18.5(f)). Therefore, defendants contend, whether measured from the plant closing, plaintiff's termination, or the amendment of the plan, the time for filing suit expired twenty or more years before filing of the complaint.

Defendants cite an additional reason for dismissal. According to defendants, § 510 protects the "the employment relationship which gives rise to an individual's pension rights." *See Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (11th Cir. 1990). "[A] fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way." *Id.* Since the amendment of the Plan's vesting requirements is not an allegation directed at the employer-employee relationship,

defendants argue, it cannot form the basis for a § 510 claim.

D.    Count Four Fails To State A Claim For Wrongful Reduction Or Elimination Of Benefits.

ERISA § 204(g)(1) provides that the accrued benefit of a participant under a plan may not be decreased by amendment of the plan, except under certain circumstances. *See* 29 U.S.C. § 1054(g)(1). Count Four alleges a violation of section 204(g)(1) because the Plan was amended to adopt the 95 Hour Rule. According to plaintiff, under such rule Monsanto no longer credited overtime hours towards Vesting Service, and the amendment was applied retroactively to deny plaintiff vesting service (Compl. ¶¶ 52-54).[17] Plaintiff alleges that he should have received credit for at least 1000 hours during 1972, which would afford him a full year of service during 1972.

In making this calculation, defendants argue, Gilley overlooks two critical aspects of the Plan and misreads the scope of remedies supplied by ERISA. According to defendants, the prior Plan provision for calculating service is less generous than the 95 Hour Rule and would yield fewer hours of service for plaintiff. The 95 Hour Rule first appears in the Plan as amended and restated in August 1980 (Apdx C, ¶18.5(f)). The 1971 Plan provision pre-dated ERISA and defined "Credited Service" as "the period of active work during a period of Continuous Service" (Apdx D, Art. III § 2(a)). Under the 1971 Plan, defendants allege, hours worked - whether regular or overtime - were not considered. Because Gilley worked from August 31 to December 31, defendant argues, under 1971 Plan terms he would have received credit for approximately one-third of a year compared to 0.411 years under the 95 Hour Rule of the amended plan. Thus, defendants assert, adoption of the 95 Hour Rule actually resulted in an increase in plaintiff's credited service and fully complies with

_____

[17]Again, it should be noted that neither side relies on the 95-Hour Rule. Thus, the court will not consider it.

ERISA section 204(g)(1).

Next, defendants argue, Gilley ignores the fact that the 1971 Plan in effect in 1972 lacked a provision for treating 1000 hours as the equivalent of one year of service. According to defendants, both the 1000 hour equivalency requirement and the 95 Hour Rule <u>first</u> appeared in the Plan as amended and restated in August 1980.[18] Thus, defendants assert, the 95 Hour Rule could not have been a scheme to reduce or eliminate service earned under the 1000 hour equivalency requirement.

Finally, defendants contend, ERISA § 204 does not provide the cause of action the plaintiff alleges. By its own terms, ERISA § 204 protects "accrued benefits," i.e., the amount of the benefit set aside for a particular individual. By contrast, defendants argue, plaintiff's allegations involve "vesting," i.e., the determination of whether a participant has earned entitlement to a benefit. *Cf.* ERISA § 203 (29 U.S.C. § 1053)(vesting) and § 204 (29 U.S.C. § 1054)(accrual). The Plan, defendants contend, follows ERISA's careful distinction. *Cf.* Apdx A, ¶ 17.1 and ¶ 17.2-17.4. According to defendants, ERISA section 204 governs the <u>amount</u> of a participant's benefit rather than the <u>entitlement</u> to a benefit.

E.    <u>Count Five Fails To State A Claim For Breach Of Fiduciary Duty.</u>[19]

First, defendants argue, the alleged acts of closing the plan and amending the plan are not subject to fiduciary duties under ERISA. Under ERISA, a fiduciary is defined as follows: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority

---

[18]It appears to this court that the 1000-hour rule came with the 1976 Plan.

[19] Count Five alleges that the Committee and/or Monsanto breached their fiduciary duties and misled employees about their pension benefits by: (1) assuring employees that they would be credited with sufficient service to be fully vested upon closure of the plant; (2) closing the plant to prevent a significant number of employees from becoming fully vested; and (3) by amending the plan to deny "participants" their actual hours of service (Compl. ¶ 57).

or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added).

According to defendants, an entity is a fiduciary only when and "to the extent" that it performs one of the prescribed duties, but it is entitled to act in its own interest when conducting business not regulated by ERISA. *See Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)[20]; *Barnes v. A.S. Lacy, D.C.*, 927 F.2d 539, 544 (11th Cir. 1991); *Gelles v. Skrotsky*, 983 F.Supp. 1398 (M.D. Fla. 1997)(relying on *John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank*, 510 U.S. 86 (1993)).

When amending a plan to change benefits, defendants argue, plan sponsors "are no more the

---

[20] *Pegram* stated:

> Speaking of the traditional trustee, Professor Scott's treatise admonishes that the trustee "is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." 2A Scott § 170, at 311. Under ERISA, however, a fiduciary may have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (e.g., firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (e.g., modifying the terms of a plan as allowed by ERISA to provide less generous benefits). Nor is there any apparent reason in the ERISA provisions to conclude, as Herdrich argues, that this tension is permissible only for the employer or plan sponsor, to the exclusion of persons who provide services to an ERISA plan.

> ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Thus, the statute does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only "to the extent" that he acts in such a capacity in relation to a plan. 29 U.S.C. § 1002(21)(A). In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

15

employees' 'fiduciaries' than when they decide what wages to offer or whether to close the plant and lay the workers off." *See Johnson v. Georgia Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994)(stating: "One subject conspicuously missing from § 1002(21)(A) is the establishment and amendment of the plan itself. Employers decide who receives pension benefits and in what amounts, select levels of funding, adjust myriad other details of pension plans, and may decide to terminate the plan altogether. In doing these things, we have held, they are no more the employees' 'fiduciaries' than when they decide what wages to offer or whether to close the plant and lay the workers off.") *See also Burns v. Rice*, 39 F.Supp. 2d 1350 (M.D. Fla. 1998)(relying on Johnson, 19 F.3d 1184); *Gelles v. Skrotsky*, 983 F.Supp. 1398 (M.D. Fla. 1997).

Here, defendants argue, they were not performing a fiduciary function when deciding to close the plant or to amend the Plan. *See, e.g., Barnes v. A.S. Lacy, D.C.*, 927 F.2d 539 (noting fiduciary duty only when and to the extent one administers plan according to its terms and holding that a fiduciary cannot be held liable for "making a good faith, truthful statement solely because the statement might be subject to misunderstanding"); *McGrath v. Auto-Body North Shore, Inc.*, 7 F.3d 665 (7th Cir. 1993)(holding no fiduciary duty owed to plaintiff when defendant amended plan repeatedly for sole purpose of excluding plaintiff).[21]

Second, defendants contend, Gilley's allegation that employees were misled regarding vesting service (allegation 1, above) does not meet the pleading requirements of Rule 9(b). "ERISA

---

[21] To the extent that Gilley's breach of fiduciary duty claim is based on defendants' amending the plan, defendants argue, it is also barred by the applicable statute of limitations. § 413 provides: "No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part after the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation. . .." *See* 29 U.S.C. § 1113. Since proper amendment to the Plan requires notification, defendants argue, plaintiff would have learned about the amendment prior to 1981 and over 20 years from the filing of this lawsuit – well past the six years permitted by ERISA § 413.

breach of fiduciary duty claims `can generally be pleaded in two ways: fraud and breach of the written plan document.... "' *See Wsol v. Great Northern Asset Management, Inc.*, 114 F.Supp. 2d 720, 724 (N.D. 111. 2000). Defendants argue that an ERISA claim which includes allegations of misrepresentation must meet the Rule 9(b) particularity requirements. *See* Fed. R. Civ. P. 9(b); *Bd. of Tr. Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n. 10 (3d Cir. 2002)(dealing with piercing the corporate veil); *Bd. Of Tr. Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range, Inc.*, 186 F.R.D. 498, 503 (N.D. Ill. 1999).

Rule 9(b) requires plaintiff to plead: "(1) precisely what statements were made in what documents or oral representations .., and (2) the time and place of each such statement and the person responsible for making ... same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). Gilley's complaint, defendants assert, does not identify the speakers, the dates of the purported statements, and how defendants were benefitted or plaintiff was disadvantaged as a result of the purported statements. According to defendants, "such detail is critical in light of the functional definition of a fiduciary under ERISA."

Moreover, defendants assert, any purported promise about vesting runs afoul of ERISA's written plan document requirement. As noted above, ERISA forbids oral and informal amendments to plan documents. By defendants' account, plaintiff's breach of fiduciary duty claim simply restates his estoppel claim.

Finally, defendants argue, Count Five must be dismissed because plaintiff seeks monetary relief in the form of payment of benefits and therefore cannot seek equitable relief under a breach

17

of fiduciary duty claim.  Plaintiff claims that he qualifies for vested benefits under the Plan that would entitle him to pension benefits (Compl. ¶¶ 14-26).  Defendants contend that if plaintiff has a claim for benefits (or any other section of ERISA), he cannot state a claim under the catch-all provision of section 502(a)(3).  Defendants rely on *Varity Corp. v. Howe*, 516 U.S. 489, 507-517 (1996), which stated: "Where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 515.  *See also Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284 (11th Cir. 2003); *Seales v. The Amoco Corp.*, 82 F.Supp. 2d 1312 (M.D. Ala. 2000).

Here, Gilley has claimed entitlement to pension benefits (Compl. ¶¶ 14-26) under § 502(a)(1)(B).  Pursuant to *Varity*, defendants argue, the § 502(a)(3) "catch all" and corresponding fiduciary breach claim are not available, and Count Five should therefore be dismissed.

II.     Plaintiffs' Response

     A.     <u>Introduction</u>

Plaintiffs argue that this court should grant their Motion to Continue to allow for additional discovery.  In the Motion to Continue, plaintiffs reference the Appendix to defendants' Motion to Dismiss.  Despite defendants' reliance on *Brooks, see supra*, plaintiffs maintain, this court may convert the motion to dismiss into a motion for summary judgment.  Plaintiffs agree that the Plan documents submitted by defendants may be considered but argue that Appendix B (the Tax Management article) is an unverified document not related to the complaint.[22]  Therefore, plaintiffs

---

[22] Plaintiffs further argue: "Plaintiffs maintain that this version of the Plan [the 1980 version] is not relevant to the present action because this version reflects changes including the 95-Hour Rule amendment that were made to the Plan in 1979."

However, defendants point out, the complaint itself relies on portions of the amended plan, e.g., the 1000

18

contend, this court's consideration of that document would result in automatic conversion into a motion for summary judgment.

Furthermore, plaintiffs contend, defendants have not attached a copy of the 1976 plan. While the 1980 version contains the 95-Hour Rule, plaintiffs assert, the 1976 document would not.[23] Plaintiffs request discovery on this issue and access to the original 1976 Plan documents.

Additionally, plaintiffs argue, their case centers on the extent to which ERISA preemption applies. "ERISA cannot apply retroactively to govern the rights and responsibilities that attached to the Plan before ERISA's effective date." *Burks v. Am. Cast Iron Pipe Co.*, 212 F.3d 1333, 1337 (11th Cir. 2000). Plaintiffs argue that this is a situation where plan participants' rights are related to issues that pre-dated ERISA, thus warranting "extrinsic evidence ... to illuminate plan documents if they are ambiguous under state law." *See Burks* at 1337. Moreover, plaintiffs contend, in regard to those aspects of plaintiffs' claims that do fall under ERISA, the *Burks* court recognized a particular need for discovery in light of ERISA's strict rules of preemption and plaintiffs' need to scrutinize plan documents in their entirety, especially where defendants have exclusive control over these documents. *See Burks* at 1338.

Therefore, plaintiffs request that either (1) the court refuse to consider the materials in the defendants' Appendix (including the 1980 conformed Plan) and decide the motion under the 12(b)(6) standard or (2) grant plaintiffs' Motion to Continue to allow additional discovery so that plaintiffs may respond to the defendants' motion under the summary judgment standards. *See, e.g., Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988)(recognizing that, while

---

hour equivalency requirement.

[23]Plaintiffs have been give the 1976 Plan.

not a per se rule, "summary judgment should not be granted until the party opposing the motion has

had an adequate opportunity for discovery").

      B.     <u>Counts One and Two - Recovery under ERISA section 502</u>

Section 502 provides:

> A. A civil action may be brought –
>> (1)     by a participant or beneficiary –
>> (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>> (2)     by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 409;
>> (3)     by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms oft he plan, or (B) to obtain appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this title or the terms of the plan.

*See* 29 U.S.C. § 1132.

According to plaintiffs, defendants are seeking unfairly to limit Gilley's claims to section

502(a)(1)(B) for benefits under the terms of the Plan then contend that he is not entitled to relief due

to the 95 Hour Rule in the amended Plan.  However, plaintiffs contend, they are "masters of their

complaint," and Gilley does not have to delineate at this time the precise ERISA subsection on which

he relies.

Plaintiffs rely on *Smith v. Contini*, 205 F.3d 597, 605 (3ʳᵈ Cir. 2000) for a discussion of the

various subsections of ERISA section 502. *Contini* explained that an action brought pursuant to

section 502(a)(1)(B) is necessarily a claim brought "under the terms of the plan," whereas a claim

brought under 502(a)(3) is a claim to other equitable relief.  According to plaintiffs, discovery will

reveal whether Gilley's claims lie under section 502(a)(3) or 502(a)(1)(B).

Gilley was employed with Monsanto from August 1972 until March 31, 1981. Plaintiffs divide Gilley's employment into three separate and distinct periods: (1) the period running from August 1971 (sic) until ERISA's effective date (the "pre-ERISA" period);[24] (2) the period from ERISA's effective date in January 1975 until the Plan was amended in 1979 to add the 95 Hour Rule; and (3) the period beginning with the 1979 Plan amendment and continuing until Gilley's employment ended March 31, 1981.[25] Since Gilley's employment covered three distinct time periods, Gilley argues, his substantive rights to retirement are determined under different legal standards. According to plaintiff, ERISA applies only to the second and third periods of service.

Moreover, Gilley argues, *Katz* does not preclude his equitable estoppel claim. In this regard, Gilley contends:

> *Katz* teaches that the principles of equitable estoppel apply only narrowly to claims under ERISA; *Katz* says nothing about a plan participant's substantive right to retirement benefits that arise before ERISA. As mentioned above Mr. Gilley's claims may or may not be governed under ERISA depending on when his substantive rights to retirement benefits were compromised. Accordingly, because different legal standards and substantive law apply to Mr. Gilley's claims for relief, the defendants' contention that Mr. Gilley had failed to state a claim in counts one and two is without merit.

C. Count Three

Plaintiffs rely on *Bodine v. Employers Casualty Company*, 352 F.3d 245, 250 (5th cir. 2003) for the elements of a section 510 claim: "To sustain a valid § 510 claim, an employee must

---

[24] During this period, plaintiffs argue, Gilley's substantive rights to retirement benefits are not governed by ERISA because they "were created before ERISA existed." *See Burks* at 1337. Regarding this pre-ERISA period, "the court as a matter of federal common law must interpret the plan 'in light of a worker's pre-ERISA state law rights.'" *Id.*

[25] Plaintiffs point out that the defendants also divide Gilley's service into three parts: (1) the initial hiring through December 1972; (2) nine years of continuous employment from 1973 through 1981; and (3) a portion of 1982. According to plaintiffs, defendants wrongfully failed to credit Gilley with a portion of 1972 and dispute Gilley's termination date of March 31, 1981.

show: (1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." Plaintiffs contend that they have sufficiently stated such a claim.

Also, plaintiffs argue, the statute of limitations has not run and the *Musick* case, *see supra*, does not preclude their claims. Plaintiffs dispute defendants' argument that the two-year limitations period is measured either from when the plant closed and the employees were laid off) or from the time of the Plan's amendment. According to plaintiffs, an ERISA cause of action accrues when the request for benefits is denied. *See Hogan v. Kraft Foods,* 969 F.2d 142, 145 (5th Cir. 1992). Furthermore, plaintiffs argue, the *Musick* court applied state law standards based on the essential nature of the plaintiff's claims. *Musick* is distinguishable, plaintiffs contend, because the court there characterized plaintiffs' claims under ERISA § 510 as being most analogous to a claim for wages and retaliatory discharge under Alabama law, while in the present action Gilley seeks a determination by the court that he is rightfully entitled to the equitable enforcement of his rights under ERISA. As such, plaintiffs argue, the essential nature of their claim for benefits is different.

Moreover, plaintiffs assert, they were "lulled into a false sense of security" based on Monsanto's representations that they were fully vested and entitled to benefits. Plaintiffs invoke the Alabama law of fraudulent concealment, as described in *Horn v. Citizens Hospital*, 425 So. 2d 1065, 1067-68 (Ala. 1982): "'... It is known to have been the long-settled doctrine of courts of equity, that if fraud has been concealed by a party, against whom there is a cause of action, the statute of limitations does not commence to run, until the fraud has been discovered, or until the party aggrieved shall have had reasonable opportunity afforded him for discovering it. The

22

reason given by Lord Redesdale, in Hovenden v. Lord Annesley (2 Sch. & Lef. 634), was, that the conscience of the party being so affected, he ought not to be allowed to avail himself of the lapse of time." (Internal citations omitted).

      D. Count Four

Gilley characterizes this claim as follows: "Plaintiffs' claim under ERISA section 204 are (*sic*) based on the premise that plan participants 'accrued' time under the Plan, or Vesting Service under the 1976 Plan, and that by enacting the 95 Hour Rule in 1979, and applying it retroactively the defendants eliminated and/or reduced their amount of Vesting Service and concomitantly their benefits."

While employment benefit plans may be amended under ERISA, plaintiffs argue, a plan may not be amended as to reduce benefits already accrued. The essence of section 204, plaintiffs argue, is to protect a plan participant's accrued benefits. "The anti-reduction rule of ERISA § 204(g) is a measure essential to prevent evasion of the <u>vesting rules</u>. Without § 204(g), retroactive plan amendments could do the former work of forfeiture rules." *See* John H. Langbein & Bruce A. Wolk, <u>Pension and Employee Benefit Law</u>, ch. 3 section E (3d. ed. 2000)(emphasis supplied).

According to plaintiffs, defendants statement that "the prior Plan provision for calculating service is less generous than the 95-hour rule and would yield fewer hours of service for plaintiffs" is self-serving, since there has been no discovery and defendants have not proffered verified proof. Plaintiffs further argue: "[D]efendants rely on a conformed and restated copy of the 1976 Plan from 1980 to make their arguments that plaintiffs have not been harmed because the 95-Hour Rule is more generous than prior plans. This comparison cannot be made without

23

the 1976 plan documents." Plaintiffs again request discovery on this issue, including "all the relevant unadulterated plan materials."

While plaintiffs agree that the 1971 Plan (attached as Def. Ex. D in Appendix) contains no 1000 hours of service rule, plaintiffs contend that the 1971 Plan is not governed by ERISA. *See Burks* at 1337. According to plaintiffs, they are entitled to discovery "on this issue because extrinsic evidence is needed to illuminate the plan documents that appear to be ambiguous as a matter of state law." *See Id. (citing Stewart v. KHD Deutz of Am. Corp.*, 908 F.2d 698, 702-03 (11th Cir. 1993)).

Plaintiffs also criticize defendants' proffered distinction between accrual and vesting as an alleged bar to their section 204 claim. First, plaintiffs assert, defendants are attempting to have all inferences drawn in defendants' favor, which is not the Rule 12(b)(6) or Rule 56 standard. Second, Gilley deems case *Rybarczyk v. TRW*, 2335 F.3d 975, 983 (6th Cir. 2001) instructive. The Sixth Circuit found that the anti-cutback rule in section 204(g) prevented defendant "from amending its retirement plan in such a way as to reduce accrued early retirement benefits 'attributable to service before the amendment'..." *Id.* The court further found:

> Most or all of the retirees in the class [had what amounted to] a mix of accrued early retirement benefits, with part being attributable to service rendered before the plan was amended on December 18, 1986, and part being attributable to service rendered after that date. Although nothing in ERISA § 204(g) prevented TRW from reducing benefits attributable to post-December 18 service, accrued benefits attributable to pre-December 18 service remain inviolate whether the age condition be satisfied 'before or after the amendment.'"

*Id.* In another case relied upon by plaintiffs, *Kay v. Boyertown Casket Co. Thrift & Profit Sharing Plan*, 780 F. Supp. 1447 (E.D. Pa. 1991), plaintiffs argue, the court found that where

24

employer-dominated plan fiduciaries amended the plan to change a valuation date to place the loss resulting from "Black Monday" on the plan instead of the employer sponsor, the retroactive application of the amendment to the plan violated ERISA § 204(g).

While plaintiffs admit defendants' right to amend the Plan to implement a 95 Hour Rule, plaintiffs maintain that retroactive application of the amendment to reduce Vesting Service violates section 204(g). According to Gilley, Vesting Service attributable to service prior to the amendment that is set aside for an employee, a.k.a. "accrued," under a defined benefit plan cannot be reduced or eliminated by subsequent amendment. Additionally, plaintiffs argue, defendants have improperly amended the Plan by applying the 95 Hour Rule in a discriminatory manner in violation of ERISA section 510.

E. Count Five

Plaintiff describes in fiduciary breach claim, summarized by the court *supra*. In fact, plaintiffs argue, the *Varity* case supports a fiduciary breach claim based on defendants' intentional misrepresentations to plan participants regarding the security of their benefits. In *Varity*, Gilley contends, the Supreme Court found that the employer was acting in its capacity as an ERISA fiduciary when it misled beneficiaries about the security of their benefits.

According to plaintiffs, defendants mistakenly invoke Rule 9(b) requirements. In light of the fact that the misrepresentations at issue occurred nearly twenty years ago, plaintiffs argue, it is reasonable that the precise statements and speakers were not identified in the complaint. Nonetheless, plaintiffs argue, Count Five has been pled with sufficient specificity.[26] Regarding defendants' contention that plaintiffs' claims run afoul of ERISA's requirements of a written

---

[26] Count V's allegations have been discussed earlier in this memorandum opinion.

plan, plaintiffs argue: "[T]hese statements were made by members of Monsanto's management about the plan and service attributed to plan participants before the enactment of ERISA and ERISA's written plan requirement."

Turning to defendants' argument that the monetary and equitable claims cannot coexist, plaintiffs contend, the complaint provides for individual claims for relief on behalf of Mr. Gilley for benefits and three class-based claims on behalf of all similarly situated plan participants.[27]

While defendants have also argued in a conclusory fashion that they were not performing fiduciary functions when deciding to close the Alabama plant or amend the Plan, plaintiffs contend, a question exists as to whether they were acting as fiduciaries.[28] Plaintiffs conclude:

> [I]f Monsanto, when making its decision to close the North Alabama plant considered the plan and the fact that many of the plant's employees were just shy of ten years of service, the bright line rule for vesting, the defendants were acting in their fiduciary capacity and breached their fiduciary duty by failing to act in the best interest of the plan and its participants. Similarly, if the plan was amended in a discriminatory manner by initiating the 95-Hour Rule for the benefit of the plan sponsor to the detriment of plan participants then the defendants were acting in their fiduciary capacity and breached their fiduciary duty.

---

[27] The complaint's "Prayer for Relief" requests the following:

    (i)      Judicial determination that plaintiff, Wendell F. Gilley, is entitled to full pension benefits from the date of his first request on January 31, 2001;

    (ii)    Judicial determination that other similarly situated plan participants are entitled to their rightfully accrued service and benefits that were denied as a result of the application of the 95 Hour Rule amendment;

    (iii)   Enjoining all defendants from applying the 95 Hour Rule to reduce and/or eliminate other similarly situated plan participants' accrued time and thereby their right to pension benefits;

    (iv)   Award of costs and a reasonable attorney's fee; and

    (v)    Award plaintiff and other similarly situated pan participants any other remedy that the court deems appropriate.

[28] Plaintiffs emphasize that when an entity is acting as a fiduciary, ERISA imposes an unwavering duty to act in the best interests of the plan participants. *See Gelles v. Skrotsky*, 983 F. Supp. 1398, 1402 (M.D. Fla. 1997).

Plaintiffs assert their entitlement to discovery to determine exactly what hat was being worn by

which defendant at the relevant time.

## CONCLUSIONS OF LAW

If Gilley is entitled to a full year for 1972 because of the 1000 hour provision of the 1976

Plan, he would have accrued vested time as follows:

<table>
<tr><td>1972</td><td>1 year</td></tr>
<tr><td>1973</td><td>1 year</td></tr>
<tr><td>1974</td><td>1 year</td></tr>
<tr><td>1975</td><td>1 year</td></tr>
<tr><td>1976</td><td>1 year</td></tr>
<tr><td>1977</td><td>1 year</td></tr>
<tr><td>1978</td><td>1 year</td></tr>
<tr><td>1979</td><td>1 year</td></tr>
<tr><td>1980</td><td>1 year</td></tr>
<tr><td>1981</td><td>1 year (including layoff period)</td></tr>
</table>

Total   At least 10 years.

Pertinent provisions of the 1976 Plan include the following:

The plan, as set forth below, which shall be known as the Monsanto Company Salaried Employes' Pension Plan (1976) ("Plan"), is an amendment, restatement and continuation of the Predecessor Plans. The rights and benefits of employes of the Corporation and its subsidiaries who meet the eligibility requirements specified in Section 2 hereof on or after January 1, 1976 shall be determined under the Plan. (Emphasis added).

....

1.5 Effective Date. The "Effective Date" of the Plan is January 1, 1976.

1.6 Plan Year. The Plan is administered on the basis of a plan year (the "Plan Year") which coincides with the calendar year. (Emphasis added).

....

Eligibility for Participation

Each employe of an Employer will become a participant in this Plan on any date as of which he meets all of the following requirements:

(a) <u>He is an actively employed salaried employe of an Employer on the Effective Date</u> or accrues Post-1975 Benefit Service (as defined in subsection 18.4 of this Plan) on or after the Effective Date; (Emphasis added).

....

Definitions

18.1 <u>Vesting Service</u>. A participant's <u>"Vesting Service" means the total of his years of service and fractional years of service</u> determined in accordance with the following rules: (Emphasis added).

(a)     Service with the Employers and the Subsidiaries, including former subsidiaries during the period they were in the status of a Subsidiary, will be treated as Vesting Service as follows:

         A.     A <u>participant will be credited with one year of Vesting Service for each Plan Year</u> during which he completes at least 1,000 "Hours of Service" (as defined in subsection 18.5) with the Employers and the Subsidiaries. (Emphasis added).

         B.     If a participant completes less than 1,000 Hours of Service in any Plan Year he shall be entitled to a fractional portion of a year of Vesting Service for such Plan Year which fraction shall be determined by dividing the number of such participant's Hours of Service during such Plan Year by the number of Hours of Service (not less than 1,000 hours) which are included in the participant's Standard Work Year (as defined in subsection 18.7).

         ....

         (iv)    Notwithstanding the provisions of paragraph (i) and (ii) above, a participant's Vesting Service for Plan Years ending prior to the Effective Date shall in no event be less than his Credited Service, less any additional Credited Service accrued while classified as an "Employe in foreign service" for such period determined in accordance with the Predecessor Plans.

....

28

18.5 <u>Hours of Service</u>   An "Hour of Service" means an hour for which an employe is directly or indirectly compensated by the Employers or by a Subsidiary in the case of service with such Subsidiary, for the performance of duties for the Employers of such Subsidiary (including hours for which an employe has been awarded backpay by the Employers or such Subsidiary or by any governmental agency or judicial body to the extent such hours are not otherwise treated as Hours of Service).  Nothwithstanding the preceding sentence, the following special rules shall apply:

(a) To the extent not otherwise treated as Hours of Service the following shall constitute Hours of Service:

(i) <u>Overtime clock hours</u>; (Emphasis added)

The 1981 Plan contains similar provisions.

In response to questions of the court, the defendants apparently do not argue that the plaintiff is not entitled to have the language of the 1976 (or 1981) Plan applied in determining vesting service. The defendant states, "The brief answer is that overtime hours are not counted under the 1976 Plan and do not push Mr. Gilley over 1000 hours during that year." This assertion would appear to conflict with the provision of 18.5 (a)(i) quoted above. At least it may be "ambiguous" as discussed in *Jones. v. American General Life and Accident Ins. Co.*, 2004 U.S. App. LEXIS 9628 (11th Cir. May 18, 2004).

Defendants rely on the "elapsed time" provisions of 26 CFR § 1.410(a)-7. That section provides for an alternative method of calculating vesting accrual. It is an alternative to the <u>general</u> method based upon counting hours of service. § 1.410(a)-7(i). This court is not satisfied that this section gives the employer the unbridled right to use this alternative simply to deny a benefit to a retired employee. Section 1.410(a)-7 (ii) states that the alternative method ... "is designed to enable a plan to lessen the administrative burdens associated with the maintenance of records of an employee's hours of service by <u>permitting each employee</u> to be credited ... ." (Emphasis added).

29

The alternative may be intended for the benefit of the employee, not the employer. There is certainly a reasonable argument that the alternative is provided to aid the employee, not simply to allow the employer to pick and choose depending on which method aids the employer. The section further provides, "Under this alternative method of crediting service, an employee's service is <u>required</u> to be taken into account ... . (Emphasis added). The court sees no suggestion that the alternative method is provided simply to give employers an alternative method to deny vesting.

The court will deny the defendants' Motion to Dismiss. The court cannot conclude that it is "clear that no relief" can be granted as to the benefits claim. There may be other claims as to which there is no merit or which may be moot if the plaintiff is entitled to benefits. The court will not now address those issues. They can be addressed through motion(s) for summary judgment. The plaintiff's Motion to Continue is moot.

This the 19th day of July, 2004.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**